**Raymond PANDELLI,
Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

**No. 79–5372.**

United States Court of Appeals,
Sixth Circuit.

Submitted June 5, 1980.

Decided Nov. 13, 1980.

Raymond Pandelli, pro se.

James R. Williams, U. S. Atty., Cleveland, Ohio, Steven R. Olah, Criminal Division, U. S. Dept. of Justice, Cleveland, Ohio, William C. Bryson, Washington, D. C., for respondent–appellee.

Before MERRITT, KENNEDY and MARTIN, Circuit Judges.

MERRITT, Circuit Judge.

On November 18, 1974, petitioner Pandelli was found guilty and sentenced consecutively for violations of the Mann Act, 18 U.S.C. § 2421, and the Travel Act, 18 U.S.C. § 1952, arising from the same criminal episodes. The issue in this case is whether principles of double jeopardy analysis developed after petitioner's direct appeal of his convictions in 1976, an appeal in which he raised the same double jeopardy questions, afford him the right to collateral relief under 28 U.S.C. § 2255.[1] We hold that inter-

---

1. Section 2255 permits a federal prisoner to assert a claim that his confinement is "in violation of the Constitution or laws of the United States." In *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Court held that an issue decided against a prisoner on direct appeal could be relitigated under § 2255. In *Davis*, the petitioner had refused to report for induction and was found guilty of violating federal law. His conviction was affirmed by the Ninth Circuit. After that affirmance, the Ninth Circuit adopted a new construction that would not have supported a conviction had it been in effect at the time of trial. The Ninth Circuit nonetheless refused a rehearing, holding that its "decision on direct appeal is the law of the case." *United States v. Davis*, 472 F.2d 596 (9th Cir. 1972). The Supreme Court reversed, holding that even though the intervening change in law went merely to statutory and not constitutional interpretation, the legal issue could be reexamined "if new law has been made . . . since the trial and appeal." 417 U.S. at 342, 94 S.Ct. at 2303, *quoting Kauf-*

vening interpretation of the double jeopardy clause by the United States Supreme Court establishes that the consecutive sentences imposed upon petitioner do constitute double jeopardy forbidden by the Fifth Amendment.

## I.

The Mann Act creates a single offense with only one jurisdictional element, transportation across state lines, and one wrong, prostitution. It requires that one "transport" a "woman or girl" across state lines "for the purpose of prostitution or debauchery." The Travel Act, a multi–purpose statute written with alternative jurisdictional elements and alternative wrongs, requires that one *either* "travel" or "use interstate facilities" (telephone, mail, etc.) "with intent to . . . promote . . . carry on, or facilitate" *either* prostitution or any one of a number of other state or federal crimes and then "perform" some act in furtherance thereof.[2]

Pandelli was convicted on a total of ten counts: five counts for violation of the Travel Act, four counts for violation of the Mann Act, and one count of conspiracy to violate the Mann Act. The four Mann Act convictions were based on four instances of transportation of a woman across state lines for purposes of prostitution. These same four instances form the basis for four of the Travel Act convictions. Counts 2, 4, 6, and 8 of the indictment charge the defendant with transporting a particular woman across a state line on four separate occasions for purposes of prostitution in vio-

lation of the Mann Act. Each of these counts is preceded by a corresponding Travel Act count arising from the same criminal episode and charging that the defendant– "with intent to promote prostitution"– "caused" the same women "to travel in interstate commerce." Pandelli was sentenced to one year on each of the ten counts, the sentences to run consecutively.

Petitioner argued on direct appeal from his convictions that the imposition of cumulative sentences for the four Mann Act and the corresponding four Travel Act violations resulted in his being twice punished for the same offense. The Sixth Circuit rejected the argument and affirmed the convictions in *United States v. Prince*, 529 F.2d 1108, *cert. denied sub nom. Pandelli v. United States*, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976). The Court applied the *Blockburger* test, the traditional means of determining whether two statutes create distinct offenses or merge to create only one. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Looking at the two statutes in the abstract, our Court found, in the words of *Blockburger*, that each statute "requires proof of a fact which the other does not," and therefore held that the two statutes do not merge. Our Court's mode of analysis on direct appeal is not made explicit, but its reasoning must have been along one of the two following lines of reasoning:

1. The Travel Act does not require the same elements under the *Blockburger* test as the Mann Act because the Travel Act is written in the alternative. The Travel Act does not require "travel" across state lines, as does the Mann Act,

---

man v. United States, 394 U.S. 217, 230, 89 S.Ct. 1068, 1076, 22 L.Ed.2d 227 (1969). For an application of this principle in the double jeopardy context, see *Hawk v. Berkemer*, 610 F.2d 445 (6th Cir. 1979).

**2.** The Travel Act provides, in pertinent part:

 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to–

 (1) distribute the proceeds of any unlawful activity; or . . .

 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, manage-

ment, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

 (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, . . . narcotics . . . , or prostitution· offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

because the "use of interstate facilities" will suffice, and it does not require "intent" to engage in prostitution, as does the Mann Act, because "intent" to engage in several other crimes, *e.g.*, bribery, extortion, narcotics, will do.

2. A person may violate the Mann Act by carrying a woman across state lines with the requisite intent without committing any further overt act, as required by the Travel Act, or the person may violate the Travel Act by committing another act after travel across state lines by himself with the requisite intent but without transporting the woman. Thus these two statutes "require" different elements because the Mann Act requires actual transportation of the woman–an element not required by the Travel Act–and the Travel Act requires an act in furtherance of prostitution after the travel–an element not required by the Mann Act.

After losing his direct appeal, petitioner began his prison term on March 8, 1977. On May 2, 1979, he filed *pro se* this motion for relief under 28 U.S.C. § 2255. He argues that cases decided after his direct appeal modify applicable double jeopardy principles so as to render unconstitutional his consecutive sentencing. The United States District Court for the Northern District of Ohio considered the effect of those cases and held that there had been "no intervening change in the law." The District Judge therefore denied the motion to vacate, set aside, or correct the petitioner's sentence and dismissed the § 2255 action.

## II.

■ In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980),

and *Illinois v. Vitale*, —— U.S. ——, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), both decided near the end of the Court's last term after the decision of the District Court in this case, the Supreme Court modified the abstract approach to the double jeopardy clause that was employed by our court on direct appeal. The Court modified the analysis and meaning traditionally given *Blockburger*. The *Blockburger* test has traditionally focused "on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale*, 100 S.Ct. at 2265. *Whalen* and *Vitale* make clear, however, that the requisite statutory elements must be examined from the vantage point of the particular case before the court.

The *Blockburger* test, as modified in *Whalen* and *Vitale*, comes into play only after other techniques of statutory construction have proved to be inconclusive. The first step is for the court to inquire "whether Congress intended to punish each statutory violation separately," *Jeffers v. United States*, 432 U.S. 137, 155 (1977). To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction. *See Whalen*, 100 S.Ct. at 1437. The Court reaches the *Blockburger* test only when those prior techniques of construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violations of two statutes.[3]

■ In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980),

---

**3.** *See Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), where the Court held in a case involving multiple punishments that it "need not reach the [Blockburger] issue." *Id.* at 11, 98 S.Ct. at 912. The Court found that the legislative history, though not conclusive in itself, was sufficient when combined with two other principles of statutory construction—the principle that ambiguity should be resolved in favor of lenity and the principle that precedence should be accorded to the terms of the more specific statute—to allow the Court to avoid the *Blockburger* problem.

In the present case, the legislative histories of the relevant acts are inconclusive, as they were in *Whalen*. The sparse history of the Travel Act, the more recently–enacted provision, contains nothing to suggest that it was meant to add to the penalties provided by already existing statutes. What little language there is suggests, on the contrary, that it was intended merely to provide an alternate means of proceeding against a single category of wrongdoers. The history points to "numerous instances of the use of the facilities of interstate commerce by racketeers and hoodlums" and of

decided in April, the Supreme Court reviewed cumulative punishments imposed under District of Columbia rape and felony murder statutes. The two violations arose out of the same criminal episode. The rape statute in question was a single purpose statute, prohibiting no crime other than rape. The felony murder statute was written in the alternative. It defined felony murder as any homicide perpetrated during the course of any of six specific felonies, including rape, robbery, kidnapping and arson. Had the Court applied the *Blockburger* test to the statutes as they stood, it would have found that they created distinct offenses, because each statute required an element that the other did not. But before it applies the test to a multi–purpose criminal statute, the Court reasoned, it must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply.[4] It must, in other words, treat a multi–purpose statute written in the alternative as it would treat separate statutes.[5] The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would. After this process of

statutory reformulation is applied to the statutes in the case before it, a court then determines whether the two offenses in question should be characterized under *Blockburger* as distinct offenses authorizing cumulative sentences.

After reformulating the felony murder statute before it in *Whalen*, the Court found that rape is a lesser offense included in felony murder, because all the elements of rape are included within the elements required in a felony murder case based on rape.[6] Because the statutes merged under the revised formulation of the *Blockburger* test and because of the established rule of construction that ambiguity concerning the force of criminal statutes should be resolved in favor of lenity, the Court held that cumulative punishment would offend the Double Jeopardy Clause. 100 S.Ct. at 1439.

*Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), a double jeopardy case decided in June that involved successive trials rather than cumulative punishment, contains a similar approach to the *Blockburger* question. The Court extended the *Whalen* analysis as it reformulated the statutes at issue in order to isolate the alternatives applicable to the particular case before it. In *Vitale*, the state had

"racketeers living in one State and controlling the rackets ... in another state." H.R.Rep. No. 966, 87th Cong., 1st Sess. *reprinted in* [1961] U.S.Code Cong. & Ad.News 2664, 2665. The Mann Act would not reach any such activities if the offenders did not cross state lines. The Travel Act history notes that many such crimes can be reached only "by making it a Federal offense to use the facilities of interstate commerce in the carrying on of these nefarious activities." *Id.*

4. As Justice Rehnquist points out in dissent, the traditional *Blockburger* test "when applied to compound and predicate offenses" turns "on arbitrary assumptions and syntactical subtleties." 100 S.Ct. at 1449. He notes that the Court "has never before had to apply the Blockburger test to compound and predicate offenses." *Id.* at 1448 n.6.

5. The Court noted that Congress could have, instead of listing the six lesser included offenses in the alternative, ... separately proscribed the six different species of felony murder under the six statutory provisions. It

is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it. 100 S.Ct. at 1439.

6. The Court made clear that it was basing its decision on the legal theory of the particular case before it, not on a purely abstract examination of the statute:

Where the offense to be proved does not include proof of rape–for example, where the offense is a killing in the perpetration of a robbery–the offense is of course different from the offense of rape, and the government is correct in believing that cumulative punishments for the felony murder and rape would be permitted under *Blockburger*. *In the present case*, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. 100 S.Ct. at 1439 (emphasis added).

prosecuted the driver of an automobile involved in a fatal accident for involuntary manslaughter after convicting him of failing to reduce speed to avoid the collision, a misdemeanor. The involuntary manslaughter statute in question criminalized "reckless" homicide. The Illinois Supreme Court held that the second prosecution constituted double jeopardy.

The United States Supreme Court recognized, as did the Illinois Supreme Court, that the Illinois involuntary manslaughter statute, unlike felony murder statutes, is not a statute expressly written in the alternative. But the Court noted that the word "reckless" contains possible alternative elements beyond the mere failure to slow sufficiently to avoid an accident. The Court pointed out that the word could contain as well, for example, a failure to keep a proper lookout. 100 S.Ct. at 2266–67. The Court thus extended the process of statutory reformulation first set out in *Whalen*. In *Whalen* it identified alternative formulations of a felony murder statute by separating the felonies listed in the statute from each other. In *Vitale* it recognized that that process of reformulation could be applied to distinguish multiple possible meanings contained within a single word. The two cases redefine the task faced by courts reviewing double jeopardy claims: before applying the *Blockburger* test they must narrow the statute to be analyzed until it includes only the alternatives relevant to the case at hand.

The Court states in each opinion, however, that the *Blockburger* test in its modified form still "focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial," *Vitale*, 100 S.Ct. at 2265, or "the *facts* alleged in a particular

indictment." *Whalen*, 100 S.Ct. at 1439 (emphasis added). Courts have always looked to the *law* the indictment claims the defendant violated. If they did not do so, they would not know even what statutes are at issue under the *Blockburger* rule. What the reviewing court must do now in applying *Blockburger* is go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail.

■ The Court's modification of the *Blockburger* test in its original, abstract form arises from a pervasive change in the criminal justice system noted by the Court in previous opinions–the increasing volume, complexity, vagueness and overlapping nature of criminal statutes.[7] The purpose of the Double Jeopardy Clause is to prevent trials and punishments that do not advance the deterrent and retributive purposes of the criminal justice system. Multiple punishments for multiple crimes or different criminal events advance those ends. Cumulative trials and punishments under several statutes that punish the same basic elements of wrongful conduct have little additional deterrent value but simply impose unnecessary additional pain on the defendant and wasteful costs on society.

When statutes have a single deterrent purpose and are well drafted and simple, it is fairly easy to determine the category of conduct to be deterred. All that is necessary is to look at statutes themselves in the abstract, for the statutory range of possibilities is easy for the mind to grasp.

■ On the other hand, a statute that is multi–purposed and written with many alternatives, or is vague and unspecific, may

---

7. In *Ashe v. Swenson*, 397 U.S. 436, 445 n.10, 90 S.Ct. 1189, 1195 n.10, 25 L.Ed.2d 469 (1970), Mr. Justice Stewart, the author of the opinion in *Whalen*, noted:

[A]t common law, and under federal criminal statutes, offense categories were relatively few and distinct. A single course of criminal conduct was likely to yield but a single offense. In more recent time with the advent of specificity in draftsmanship and the extra-

ordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction. As the number of statutory offenses multiplied, the potential for unfairness and abusive prosecution became far more pronounced. (Citations omitted).

have many meanings and a wide range of deterrent possibilities. Its meaning is more difficult to grasp in the abstract. The meaning of the statute, the precise definition of the criminal cause of action, depends more heavily on prosecutorial and judicial interpretation. The content and relationship of various criminal causes of action created by complex, overlapping, and vague statutes are worked out over time by successive judicial decisions made in response to the theories of prosecutors and defense lawyers in the cases at hand. It therefore makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements–the legal theory–that constitute the criminal causes of action in the case at hand.

### III.

In applying this mode of double jeopardy analysis to the case before us, we must first isolate the applicable elements of the Travel Act, a multi–purpose statute written with alternative jurisdictional elements and identifying alternative wrongs. It is obvious after *Whalen* and *Vitale* that we must eliminate the inapplicable alternative jurisdictional provisions (use of interstate facilities) and the inapplicable substantive provisions (narcotics, extortion, bribery, etc.).

The same problem in a different form arises because of the government's use of section 2(b) of Title 18, the aiding and abetting statute. The government seeks to expand the reach of the Travel Act in this case by using that section, which states that whoever "causes an act . . . which if directly performed by him . . . would be an offense . . . is punishable as a principal." Use of the abettor statute eliminates the requirement that the defendant travel so long as he causes another to travel. Here the four Travel Act counts do not charge that the defendant traveled in interstate commerce himself, as the statute requires on its face. Rather, they charge that he

"caused" a woman to travel with the intent to carry on prostitution. The woman he caused to travel across state lines was the alleged prostitute named in the Mann Act counts. Thus, the defendant is effectively charged in both the Mann Act and the corresponding Travel Act counts with transporting a woman across state lines for purposes of prostitution. Each of the Travel Act counts then adds an additional element in order to conform to the statute: the performance of an additional unlawful act connected with prostitution once across the state line.

Eliminating the inapplicable alternative elements of the Travel Act conjoined with the aiding and abetting statute, we find that the elements of the Travel Act offenses are identical to the Mann Act offenses except that they add the additional element of conduct in furtherance of prostitution after transportation across state lines for that purpose. The offenses therefore merge for purposes of the double jeopardy prohibition, and the cumulative sentences are forbidden.

Accordingly, the judgment of the District Court is reversed and the consecutive sentences imposed on the four Mann Act counts in question are vacated.[8]

---

8. We find petitioner's other arguments–that his acts were improperly divided into temporal and spatial units in order to support multiple punishments and that his conviction on the conspiracy count was a violation of Wharton's Rule–to be without merit.