Edward Ted FLOYD, Petitioner,

v.

R. C. MARSHALL, Supt., Respondent.

No. C81–1941Y.

United States District Court,
N. D. Ohio, E. D.

May 11, 1982.

Edward Ted Floyd, pro se.

Robert T. Russell, Jr., Asst. Atty. Gen., Columbus, Ohio, for respondent.

## MEMORANDUM

BEN C. GREEN, Senior District Judge:

This application for a writ of habeas corpus is brought by petitioner Edward Ted Floyd pursuant to 28 U.S.C. § 2254. Respondent R. C. Marshall, Superintendent of the Southern Ohio Correctional Facility, admits he has custody of Floyd, but denies that petitioner is entitled to relief.

On February 25, 1976, the Court of Common Pleas for Trumbull County, Ohio entered judgment pursuant to a jury verdict finding petitioner guilty of twelve counts of aggravated robbery (§ 2911.01, Ohio Revised Code), and one count each of rape (O.R.C. § 2907.02) and kidnapping (O.R.C. § 2905.01). He was sentenced to an indeterminate term of imprisonment totaling not less than 15 nor more than 150 years.

Through counsel, petitioner directly appealed his conviction to the Eleventh District Court of Appeals for Trumbull County, Ohio. On January 17, 1978, the judgment of conviction was affirmed.

Petitioner, proceeding pro se, then sought an appeal to the Supreme Court of Ohio. Twelve grounds for appeal were alleged in petitioner's memorandum in support of jurisdiction. On December 1, 1978, the Ohio Supreme Court dismissed petitioner's appeal for want of any substantial constitutional question.

Petitioner next applied for a writ of habeas corpus with the United States District Court for the Southern District of Ohio, Western Division. On February 3, 1981, Judge Carl B. Rubin adopted the recommendation of the Magistrate and denied the petition.

Respondent, citing the recent Supreme Court decision in *Rose v. Lundy*, —— U.S. ——, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), has moved to dismiss petitioner's entire application because it presents an unexhausted claim. In an earlier motion, respondent moved to dismiss only this unexhausted second ground claiming that petitioner still has a state post-conviction remedy available pursuant to O.R.C. § 2953.21.

Petitioner's claim does at the outset appear to be a "mixed petition" containing claims presented and not presented to the state court for consideration. Under the "total exhaustion" rule of *Rose v. Lundy*, the entire petition might be dismissible. *Lundy*, —— U.S. at ——, 102 S.Ct. at 1203.

By its holding in *Lundy*, however, the Supreme Court cannot have intended to legislate away clearly-stated provisions of the habeas corpus statute itself. The exhaustion requirement of 28 U.S.C. § 2254(b)–(c) is stated as follows:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the rights under the law of the State to raise, by any available procedure, the question presented.

■ The statute thus requires a petitioner to have exhausted the state remedies *actually available* to him prior to consideration of the issues in a habeas corpus action. If no state corrective procedure is available or if the available procedures are ineffective, the remedies need not be pursued for exhaustion purposes. *Keener v. Ridenour*, 594 F.2d 581, 590 (C.A. 6, 1979).

■ In the second ground to petitioner's application, he alleges that identification testimony offered at trial was tainted by unduly suggestive pre-trial behavior by the police and prosecution. The Ohio post-conviction statute, however, affords petitioner no avenue to present this ground to Ohio's courts. The Ohio Supreme Court has narrowly construed that statute as being available only for consideration of claims which, if meritorious, would render the judgment of conviction void or voidable. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).

No question was raised regarding the trial court's jurisdiction in petitioner's case. And the ground alleged is one which could have been raised at trial or on appeal. Accordingly, the judgment of conviction is neither void nor voidable and would be barred from consideration in a petition for post-conviction relief. Petitioner would not, in the manner respondent suggests, have standing in the state courts to present the second ground of his habeas application.

Petitioner is also unable to pursue a delayed appeal of his conviction to present the allegation of tainted identification testimony to the courts in Ohio. *See*, O.R.C. § 2953.05. The Sixth Circuit has recognized that a delayed appeal is not available

to present new issues once a direct appeal has been pursued. *Keener,* 594 F.2d at 591. A direct appeal taken by petitioner resulted in the affirmation of his conviction. Therefore, a delayed appeal is not available for petitioner to present the yet unconsidered issue raised in the instant application.

Indeed, petitioner has no forum in Ohio to present the allegation of tainted identification testimony. He has available no state remedy to exhaust prior to this Court's consideration of the unexhausted claim. Thus, despite the possibility that the application herein is a "mixed petition" under the *Lundy* definition, this Court may consider it.

The Court believes its conclusion not to conflict with the holding in *Lundy*. In finding that the habeas corpus statute requires total exhaustion of state court remedies prior to consideration in federal court, the Supreme Court referred to its decision in *Ex parte Hawk,* 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944). *Lundy,* —— U.S. at ——, n. 7, 102 S.Ct. 1202, n. 7. In *Hawk,* the Court had recognized that the exhaustion doctrine did *not* bar relief "where the state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised." *Hawk,* 321 U.S. at 118, 64 S.Ct. at 450.

In the Supreme Court's opinion, Justice O'Connor cited decisions of the Fifth and Ninth Circuits for their adoption of a "total exhaustion" rule. *Id.* —— U.S. at ——, n. 5, 102 S.Ct. 1201, n. 5, citing *Galtieri v. Wainwright,* 582 F.2d 348, 355–60 (C.A. 5, 1978) (en banc); *Gonzales v. Stone,* 546 F.2d 807, 808–10 (C.A. 9, 1976). But the Fifth Circuit has also recognized an exception to the exhaustion doctrine which applies in this case. Where the goals of the exhaustion doctrine would not be furthered or where an overriding federal concern would be frustrated, no attempt to exhaust the state's remedies need be made. *Galtieri,* 582 F.2d at 354–55.

The Sixth Circuit, while heretofore having not adopted a total exhaustion rule, has similarly recognized that where state court remedies are unavailable or ineffective, courts hearing habeas petitions may have occasion to consider claims never presented in the state courts. *Keener,* 594 F.2d at 590.

Petitioner having no forum in Ohio to present the second ground of his habeas corpus application, the Court finds him to have fulfilled the exhaustion requirement stated in 28 U.S.C. § 2254(b)–(c). Respondent's motion to dismiss the instant petition on the ground that it contains an unexhausted claim is denied. The Court will now consider the merits of the petition.

Petitioner essentially alleges the following four grounds in support of his application for habeas corpus relief:

1. That his conviction was obtained in violation of the protection against double jeopardy since he was convicted of 12 counts of aggravated robbery, one count of rape, and one count of kidnapping arising out of the same transaction.

2. That pre-trial misconduct of a suggestive nature by police and prosecution tainted in-court identification of petitioner by witnesses.

3. That he was denied effective assistance of counsel by his attorney's failure to investigate the facts, failure to assert a defense, failure to move to suppress the fruits of an allegedly warrantless search and seizure, failure to move to sever his trial from the trial of his codefendant, and failure to assert ground two, above, and

4. That the evidence adduced at trial was insufficient for conviction.

■ In his first ground for relief, petitioner alleges a "three-way violation" of his Fifth Amendment protection against double jeopardy. Petitioner was tried for 12 counts of aggravated robbery and one count each of rape and kidnapping. Petitioner contends that he "should be convicted of one offense, that of kidnapping, if guilt is to be had." Petitioner's Memorandum in Support at 3.

Petitioner essentially claims that his indictment and conviction under the three criminal statutes arising from one criminal transaction violated the double jeopardy

protection. By this allegation, petitioner focuses on the aspect of the Double Jeopardy Clause protecting against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

The test for determining whether offenses are the same or distinct for double jeopardy purposes was initially stated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the *Blockburger* test, the Court must compare the elements of the crimes charged and must determine whether one offense requires proof of a fact that the other does not. *Id.* at 304, 52 S.Ct. at 182. If the facts necessary to prove one crime differ from those facts needed for proof of the other, the offenses are distinct and may be separately charged, tried, and punished without offending the Double Jeopardy Clause.

The Supreme Court recently modified the *Blockburger* test to tailor its inquiry to the facts actually presented at trial. *See, Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); and *Pandelli v. United States*, 635 F.2d 533, 536 (C.A. 6, 1980). Where statutes are drawn in the alternative, inapplicable alternatives must be purged by the reviewing court, and the statute must be reformulated in a manner that conforms to the evidence presented at trial. *Pandelli*, 635 F.2d at 536–37. The Court must then determine whether the offenses are distinct or the same under the *Blockburger* test.

Reformulating the alternatively drawn kidnapping statute to conform to petitioner's case establishes that petitioner was convicted pursuant to O.R.C. § 2905.01(A)(1) and (2), which states in pertinent part:

(A) No person, by force, [or] threat, . . . shall remove another from the place where he is found . . .

(1) To hold . . . as a shield or hostage [or]

(2) To facilitate the commission of any felony or flight thereafter. . . .

The trial court instructed the jury that to find petitioner guilty of kidnapping, they must find he removed one Judith Walton "for use as a shield or hostage, and for the purpose of facilitating the commission of the Aggravated Robbery or flight thereafter." Record at 759.

Petitioner's first claim, then, is that kidnapping and aggravated robbery are the same offense for double jeopardy purposes. Taken in the context of petitioner's case, however, each offense has at least one element not in common with the other. Petitioner was charged with a taking of *property* by threat of force in connection with the charges of aggravated robbery. As to the kidnapping count, petitioner was charged with forcibly taking a *person* from one place to another. Accordingly, petitioner's convictions for aggravated robbery and kidnapping do not raise a double jeopardy issue. *Heard v. Marshall*, No. C–1–78–809 (S.D.Ohio, Mar. 13, 1981); *see also, Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228.

It appears from petitioner's Memorandum in Support, at 2, that he erroneously believes he was convicted under a different subsection of the kidnapping statute. Section 2905.01(A)(4) prohibits kidnapping for the purpose of engaging in sexual activity with the victim against her will. Since petitioner was not so charged or convicted, whether punishment for rape and kidnapping under that subsection would violate the Double Jeopardy Clause need not be decided here.

The facts required to establish kidnapping under O.R.C. § 2905.01(A)(1) or (2) are also dissimilar to proofs required to establish rape. The rape statute, O.R.C. § 2907.02(A)(1), requires sexual conduct as defined in O.R.C. § 2907.01(A), achieved by the threat of force.

Applying the *Blockburger* test, the Court finds that while force or the threat of force is common to both kidnapping and rape, each crime requires proof of a fact not present in the other. While kidnapping requires proof of an abduction or restraint necessarily established in proving rape, an additional element establishing the purpose behind the abduction determines the tenor

of the offense. Committee Comment to O.R.C. § 2905.01.

As the trial court instructed, Record at 759, the indictment charged petitioner with removing Judith Walton for the purpose of using her as a shield or hostage, and to facilitate the commission of the aggravated robbery. Proof of facts establishing such a purpose indicate an animus separate from that required for rape. Under Ohio law, a separate animus as to even the same or similar offenses requires finding them to be distinct. O.R.C. § 2941.25(B); *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979).

Furthermore, sexual conduct, an essential element to the rape offense, is not an element of the kidnapping offense for which petitioner was convicted. The offenses, therefore, are distinct.

But even if rape and kidnapping were the "same" offenses under the circumstances of this case, the applicable double jeopardy protection was not impaired. Petitioner's allegation implicates the double jeopardy protection against multiple punishments for the same offense. *See, North Carolina v. Pearce*, 395 U.S. at 717, 89 S.Ct. at 2076. Scrutiny of petitioner's sentence reveals that while he was found guilty of both rape and kidnapping, he was sentenced only on the kidnapping conviction.

It is clear from the foregoing discussion that petitioner was not twice or thrice placed in jeopardy by his conviction for aggravated robbery, kidnapping, and rape. Thus, the first ground asserted in the application for a writ of habeas corpus is not well taken.

Petitioner next alleges that the in-court identification testimony of eyewitnesses to the robbery was tainted by the unduly suggestive pre-trial behavior of the police and prosecution. Respondent has moved to dismiss this ground claiming that pursuant to Rules 12(B)(3) and 12(G), Ohio Rules of Criminal Procedure, petitioner has waived any such error. Criminal Rule 12(B)(3) requires that motions to suppress identification testimony be made prior to trial. Criminal Rule 12(G) provides that the failure to make a timely motion constitutes a waiver.

■ State procedures requiring that evidence or testimony be challenged in a pretrial motion or at trial have been held constitutional. *Wainwright v. Sykes*, 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) (contemporaneous objection rule). When a habeas application contains a claim which would be waived pursuant to a state procedural rule, a district court, except under certain conditions, will not consider it.

In *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court considered the waiver standard found in Rule 12(b)(2), Federal Rules of Criminal Procedure, to determine whether an alleged constitutional violation would be reviewed on habeas corpus. To obtain relief from the waiver, the *Davis* court required a showing of cause for noncompliance with the rule, and some showing of actual prejudice resulting from the alleged deprivation of constitutional rights. *Id.* at 242–45, 93 S.Ct. at 1582–85.

In *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Supreme Court applied this cause-and-prejudice standard to a state rule of procedure. With the *Francis* decision, the cause-and-prejudice standard was incorporated directly into the law governing the availability of review in habeas corpus cases. *Sykes*, 433 U.S. at 85, 97 S.Ct. at 2505. The Court more recently applied that standard in *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

■ Petitioner suggests that ineffective assistance of counsel caused his failure to move to suppress the identification testimony by claiming that "trial counsel refused to develop the matter of improper identification." Ineffective assistance of counsel has constituted sufficient cause and has permitted relief from waiver and review in habeas corpus cases. *See e.g., Rachel v. Bordenkircher*, 590 F.2d 200, 204 (C.A. 6, 1978) (cause exists when failure to make timely objections stems from inexperience, inattention, or lack of knowledge of the law

as acknowledged by affidavits of counsel); *Canary v. Bland*, 583 F.2d 887, 890–91 (C.A. 6, 1978) (clear prejudice from attorney's failure to raise on appeal manifest deficiencies in juvenile court transfer proceedings).

In reviewing the record, however, the Court finds no merit to petitioner's suggestion that the failure to move to suppress the eyewitness testimony resulted from ineffective assistance of counsel.

The Sixth Amendment as interpreted by the courts, requires a defense attorney to perform at least as well as a lawyer with ordinary training and skill in criminal law. *Beasley v. United States*, 491 F.2d 687 (C.A. 6, 1974). Matters of trial tactics and strategy will not be held to have deprived an accused of effective assistance of counsel if such tactics would be considered competent by attorneys of reasonable skill and training. *Id.* at 696.

Few, if any, of the 11 testifying eyewitnesses to the robbery were able to identify petitioner as a participant. While positive identification was made of petitioner's codefendant as one of the perpetrators, the second participant had worn a bandana around his face making such positive identification unlikely if not impossible. Since those present at the scene of the robbery were unable to identify petitioner, an attorney of ordinary training and skill could reasonably have decided against raising the issue in a motion to suppress.

To relieve petitioner of the waiver he acknowledges, Petitioner's Memorandum in Support at 4, the Court would also have to find that he was actually prejudiced by admission of the allegedly erroneous testimony. Any taint to the testimony of the eyewitnesses would not affect a finding of petitioner's guilt or innocence since none could identify him from the scene of the crime. Petitioner cannot, therefore, have been prejudiced by their testimony.

The suggestion that Ms. Walton's testimony was tainted is also unsubstantiated by the record. Petitioner's attorney questioned her at length on cross-examination, apparently trying to establish that her identification of petitioner was, as he claims, "based on the impermissible one single photographic show-up of Petitioner and the witness being informed that Petitioner was the guilty party they should identify." Record at 309–11, 314–19.

Nonetheless, Walton in her trial testimony positively identified petitioner as one of the two men who had abducted and raped her. Record at 259–60. Walton had spent a number of hours with her abductors, therefore having sufficient opportunity to study their appearance. Having later seen petitioner's face, she was also able to identify his voice as the voice of the man who took her from the bar. Record at 290. She testified to seeing a shotgun in the motel room where she was raped which resembled the shotgun she saw wielded by the man whose face was covered during the robbery. Record at 263–64.

By her testimony, Walton firmly asserted her positive belief that petitioner was the man who raped and kidnapped her. Her testimony also presented circumstances which would allow a rational trier of fact reasonably to conclude that petitioner was one of the participants in the robbery. *See, Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793, 61 L.Ed.2d 560 (1979).

Faced with such testimony, his attorney's failure to assert the unsubstantiated infirmities petitioner alleges does not rise to constitutional proportions establishing sufficient cause for relief from the waiver provision. Having failed to establish cause for the waiver and prejudice from introduction of the identification testimony, petitioner will be held to the waiver imposed by Ohio Crim.R. 12(G).

The second ground of petitioner's application for a writ of habeas corpus is therefore dismissed.

In the third ground of the instant application, petitioner claims he was denied effective assistance of counsel. In support, petitioner alleges that "trial counsel made no factual investigation of the facts of this case and thereby failed to assert proper and timely defense that could have been effectively demonstrated...." Petitioner's

388

Memorandum in Support, at 6, reveals that this allegation is another directed to the issue of identification testimony.

As the Court noted in its discussion of petitioner's second ground, *supra*, nothing in the record suggests a basis for moving to suppress the allegedly tainted identification testimony. An attorney of ordinary training and skill might instead have acted as petitioner's attorney did in attempting to impeach the credibility of the testimony on cross-examination.

Furthermore, petitioner has not in any way shown that his attorney failed to conduct an investigation into the facts of the case, or that further investigation might have revealed evidence implicating the reliability of the testimony. Accordingly, this particular aspect of the ineffective assistance allegation is without merit.

■ Petitioner also claims that his attorney failed to move "to suppress evidence obtained through an illegal and warrantless search and seizure of items taken from Petitioner's home." Petitioner's Memorandum in Support at 6. There is evidence in the record, however, that the search of petitioner's home which yielded two leather jackets placed into evidence, was consented to by petitioner's wife. Record at 455, 512. Indeed, in testimony recounting a conversation he had with another inmate, petitioner referred to himself as having consented to a search of his house. Record at 453. A search effected without a warrant but with the consent of one having equal right and access to the premises where evidence is found does not violate the Fourth Amendment. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, this aspect of the ineffective assistance allegation is without merit.

■ In the final allegation associated with the ground of ineffective assistance of counsel, petitioner claims that his attorney failed to move to sever his trial from the trial of his codefendant. Petitioner's Memorandum in Support at 6. This allegation is contradicted by the record below.

On February 5, 1976, the trial court held a hearing on motions for joinder and severance of offenses. At that hearing, counsel for petitioner opposed the state's motion to join the trials of petitioner and his codefendant. That motion, which preempted a motion for separate trials, was granted.

Since his attorney did indeed endeavor to have his client tried apart from his codefendant, petitioner's allegation that his attorney's failure to do so constituted ineffective assistance of counsel is entirely without merit.

■ In the final ground of his habeas application, petitioner claims that the evidence adduced at trial was insufficient to convict him. The inquiry on habeas corpus into the constitutional sufficiency of the evidence is limited. The Court, in reviewing the record, must determine whether a rational jury could reasonably have found guilt beyond a reasonable doubt as to each element of the crimes charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Testimony at trial significantly included the identification of petitioner by the rape and kidnapping victim. She not only identified petitioner as the man who kidnapped and raped her. She also identified his voice as the voice of the man who, face covered, wielded the shotgun during the robbery.

In their testimony at trial, those present at the scene of the robbery identified a bandana found in petitioner's car as similar to the one worn by the unidentified perpetrator of the crime. Two leather coats taken from petitioner's home incident to a consensual search were identified by victims of the robbery as belonging to them. The coats had been taken prior to the perpetrators' flight from the bar.

The Court finds that this and other evidence adduced at trial was sufficient for a rational jury reasonably to find petitioner guilty of the crimes charged. There thus is no merit to petitioner's final allegation.

Petitioner's application for a writ of habeas corpus presents no ground entitling

him to relief and therefore is denied. An order will be entered in accordance with this opinion.