UNITED STATES of America,
Plaintiff,

v.

Michael J. KUHN, Defendants.

No. 99–20060–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Sept. 24, 2001.

Michael J. Hluchaniuk, U.S. Attys. Office, Bay City, MI, for United States.

William A. Brisbois, William A. Brisbois & Assoc., Saginaw, MI, for Defendant.

## ORDER GRANTING IN PART DENYING IN PART MOTION FOR JUDGMENT OF ACQUITTAL BASED ON DOUBLE JEOPARDY

LAWSON District Judge.

This matter is before the Court on the defendant's post-trial motion for judgment of acquittal under Fed.R.Crim.P. 29 on the ground that his conviction on both count one and count two of the indictment violated the Double Jeopardy Clause of the Fifth Amendment. He likewise argues that convicting him on both counts three and four violates the Double Jeopardy Clause. The parties have each filed briefs on the issue, which was also raised in a pretrial motion to dismiss the indictment. The Court denied that motion on January 4, 2001 as premature under the rationale stated in *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The Court finds that the parties have adequately set forth the relevant law and facts in their briefs and motion papers, and oral argument would not aid in the disposition of the instant motion. *See* E.D. Mich. LR 7.1(e)(2). Accordingly, the Court **ORDERS** that the motion be decided on the briefs submitted. Because the Court finds that a conviction and sentence on both count one and count two of the indictment would constitute multiple punishments for the same offense, the Court will grant the motion in part and dismiss count two of the indictment. However, because the Court finds that the charges and proofs at trial as to counts three and four of the indictment establish separate violations of the same statute, the Court will deny the motion as to those two counts.

I.

The defendant in this case is the former superintendent of the Bay City Wastewater Treatment Plant. He was charged in a four-count indictment with criminal viola-

tions of the Clean Water Act, 33 U.S.C. § 1311, *et seq.* (the Act). Two counts of the indictment allege that the defendant caused the deposition and discharge of sewage sludge into a ditch that led directly into the Saginaw River. The other two counts alleged violations of the reporting requirements of the Act.

Count one alleges that from on or about August 23, 1996 to on or about August 30, 1996, the defendant did knowingly cause removal and disposal of sewage sludge without a permit, in such a way that the sewage sludge would likely enter navigable waters, in violation of 33 U.S.C. § 1345(a)[1] and 18 U.S.C. § 2.[2] Count two alleges that from on or about August 23, 1996 to August 30, 1996, the defendant did knowingly cause the discharge of a pollutant from a point source into navigable waters without compliance with the appropriate permits, in violation of 33 U.S.C. § 1311(a).[3]

Count three alleges that on or about June 9, 1997, the defendant did knowingly cause false statements to be made in viola-

tion of 33 U.S.C. § 1319(c)(4)[4] and 18 U.S.C. § 2. Count four alleges that on or about June 10, 1997, the defendant did knowingly certify a false material statement in a Discharge Monitoring Report filed under the Clean Water Act, in violation of 33 U.S.C. § 1319(c)(4).

The matter proceeded to jury trial which began on April 24, 2001. The evidence offered at trial showed that some time in August 1996, the defendant, as plant superintendent, embarked upon a project to clean and restore portions of the plant in order to improve operations. One area to be cleaned, known as the "chlorine contact chamber," was a large, open cement tank in which water in its last stage of treatment was pumped and infused with chlorine before it was finally discharged into the environment, which in this case was into the Saginaw River. In order to clean the chamber, it had to be emptied not only of water but also of the sludge and debris that had accumulated in the bottom of the tank over the years. The evidence estab-

---

1. Title 33 U.S.C. § 1345(a) states that

   [n]otwithstanding any other provision of this chapter or of any other law, in any case where the disposal of sewage sludge resulting from the operation of a treatment works as defined in section 1292 of this title (including the removal of in-place sewage sludge from one location and its deposit at another location) would result in any pollutant from such sewage sludge entering the navigable waters, such disposal is prohibited except in accordance with a permit issued by the Administrator under section 1342 of this title.

   33 U.S.C. § 1345(a).

2. Title 18 U.S.C. § 2 states that

   (a) [w]hoever commits an offense against the United States or aids abets, counsels, commands, induces or procures its commission, is punishable as a principal.

   (b) [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

   18 U.S.C. § 2.

3. Title 33 U.S.C. § 1311(a) states that

   [e]xcept as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

   33 U.S.C. § 1311(a).

4. Title 33 U.S.C. § 1319(c)(4) states that

   [a]ny person who knowingly makes any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter or who knowingly falsifies, tampers with, or renders inaccurate any monitoring device or method required to be maintained under this chapter, shall upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than 2 years, or by both. . . .

   33 U.S.C. § 1319(c)(4).

lished that plant personnel used a large industrial waste pump to draw down the contents of the chlorine contact chamber and discharge it into an outfall ditch which led to the Saginaw River. There was no dispute that sewage sludge was included in the effluent discharged into the ditch, and that depositing the sewage sludge into the ditch violated the plant's permit issued by the Michigan Department of Environmental Quality (MDEQ). The contested issue at trial was whether the defendant was the one who ordered the chamber to be emptied in that fashion, or whether instead a subordinate gave the order to pump the sludge into the ditch without the defendant's knowledge or approval.

The government also offered evidence that on June 9, 1997, the defendant questioned the accuracy of the data on a Discharge Monitoring Report for influent samples taken at the plant on May 3, 1997. The defendant contended that the test results on the samples of influent for that day were so high that the data must have been erroneous or the samples were defective. Accordingly, he instructed a laboratory technician to alter the report for that day and substitute the monthly averages for those influent tests in place of the actual results of the May 3 testing. The employee did as instructed by the defendant, and the next day, June 10, 1997, the defendant signed a certification of the report that contained the May 3 data as accurate and submitted it to the MDEQ. The defendant denied that the report was false but rather claimed that he was following proper procedure when dealing with obviously erroneous test data.

The trial concluded on May 14, 2001 at which time the jury returned a verdict of guilt on all four counts. The defendant filed a timely motion under Fed.R.Crim.P. 29.

## II.

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Double jeopardy protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense. *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir.1997). However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344 n. 3, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

In this case, the defendant claims that the charges in count one and count two of the indictment arose out of the same conduct: pumping the sewage sludge into the outfall ditch. He likewise contends that counts three and four arise from the same act. The first step in deciding whether one act can give rise to more than one conviction under separate statutes, or separate sections of the same statute, is to determine "whether Congress intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir.1980)(quoting *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)). "To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Pandelli*, 635 F.2d at 536

If congressional intent is not expressed or cannot be discerned by other techniques of statutory construction, then the Court analyzes the elements of the two crimes to determine if Congress intended multiple punishment for the same act. The test expressed by the Supreme Court in *Blockburger v. United States*, 284 U.S.

299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), remains the standard to determine whether double jeopardy prohibits multiple punishments. *United States v. Barrett*, 933 F.2d 355, 360 (1991). The Court

focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Id.* at 360–61 (internal citations and quotes omitted).

■■ The Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). However, in *Pandelli*, the Court observed that the Supreme Court modified the application of the *Blockburger* test in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), especially when dealing with complex and overlapping statutes that define multiple ways which they may be violated and contain alternative elements.

[B]efore [the Court] applies the [*Blockburger*] test to a multi-purpose criminal statute, ... it must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply.

*Pandelli*, 635 F.2d at 537.

This Court, then, is obliged to examine that statutes in light of the prosecution and defense theories of the case at hand in its application of the *Blockburger* test as modified by subsequent decisions.

A.

Count One of the indictment charges a violation of 33 U.S.C. § 1345(a) as follows:

From on or about August 23, 1996, to on or about August 30, 1996, the precise time unknown to the grand jury, in the Eastern District of Michigan, Northern Division, **MICHAEL J. KUHN,** defendant herein, did knowingly cause the removal and disposal of in-place sewage sludge resulting from the operation of the Bay City Wastewater Treatment Plant, a treatment works as defined in 33 U.S.C. § 1292, from one location and its deposit at another location, and thereby, without a permit, caused a pollutant from that sewage sludge to enter navigable waters, in that **MICHAEL J. KUHN,** knowingly caused the cleaning of portions of the Bay City Wastewater Treatment Plant in such a way that sewage sludge, a pollutant, was removed from certain containers and disposed of improperly so that the sewage sludge flowed into the Saginaw River without a permit, in violation of Title 33, United States Code, section 1345(a) and Title 18, United States Code, section 2.

Count Two alleges that the defendant violated 33 U.S.C. § 1311(a) and reads:

From on or about August 23, 1996, to on or about August 30, 1996, the precise times unknown to the grand jury, in the Eastern District of Michigan, Northern Division, **MICHAEL J. KUHN,** defendant herein, did knowingly cause the discharge of a pollutant, as defined in 33 U.S.C. § 1362(6), from a point source into navigable waters of the United States without compliance with the permit requirement in 33 U.S.C. § 1342, in that **MICHAEL J. KUHN** knowingly caused sewage sludge to be discharged from a ditch into the Saginaw River, in

violation of Title 33, United States Code, section 1311(a) and Title 18, United States Code, section 2.

■ Title 33 U.S.C. § 1345(a) has six elements and prohibits a person from (a) knowingly, (b) disposing, (c) of sewage sludge, (d) from a treatment works, (e) which would result in a pollutant from sewage sludge entering navigable waters, (f) without, or in violation of, an NPDES permit. 33 U.S.C. § 1345(a). Title 33 U.S.C. § 1311(a) likewise has six elements and provides that no person shall "(1) knowingly, (2) discharge, (3) a pollutant, (4) from a point source, (5) into a navigable water of the United States; (6) without, or in violation of, an NPDES permit." *United States v. Law,* 979 F.2d 977, 978 (4th Cir.1992); 33 U.S.C. § 1311(a). Because the first and last elements are the same, the analysis concentrates on whether one of the other four elements under 33 U.S.C. § 1311(a) requires a proof of fact that 33 U.S.C. § 1345(a) does not.

The first inquiry is whether there is a difference between "discharge" and "disposal" of a pollutant. "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). "Discharge," when the term is unqualified, includes "discharge of a pollutant." 33 U.S.C. § 1362(16). The term "disposal" is not defined in Title 33. However, Title 42, Chapter 82 which governs solid waste disposal defines "disposal" to mean "discharge ... of any solid waste...." 42 U.S.C. § 6903(3). This definition, although its binding effect is limited to Title 42, Chapter 82, is instructive. In reviewing Title 33, it appears that "disposal" is used to both describe a facility and the action of "disposing." However, when intended to describe conduct, § 6903(3) helps to determine the sense of the term as it is used in § 1311(a).

The second inquiry is whether "sewage sludge" is a pollutant. As the government points out, the definition of "pollutant" includes "sewage sludge." 33 U.S.C. § 1362(6). Therefore, since "sewage sludge" is a type of "pollutant," these elements do not require a separate proof of fact in this case. Because "sewage sludge" is included within the broader definition of "pollutant," a more general term, it is analogous to a lesser-included offense.

The third inquiry is whether a "treatment works" can be considered a "point source." "Treatment works" means

> any devices and systems used in the storage, treatment, recycling, and reclamation of municipal sewage or industrial wastes of a liquid nature to implement section 1281 of this title, or necessary to recycle or reuse water at the most economical cost over the estimated life of the works, including intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment, and their appurtenances; elements essential to provide a reliable recycled supply such as standby treatment units and clear well facilities; ....

33 U.S.C. § 1292(2)(A). "Treatment works" also includes "any other method or system for ... storing [or] disposing of municipal waste...." 33 U.S.C. § 1292(2)(B). A "point source" is "any discernible, confined and discrete conveyance ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). In the instant case, a pump was used to transport the sewage sludge from the chlorine contact chamber to an outfall ditch which leads to the Saginaw River. Because the definition of "treatment works" includes both pumps and outfalls, and a pump and an outfall ditch are a discernible conveyances which can discharge pollutants, the "treatment works" in this case includes a "point source," or, more precise-

ly, the "point source" in this case was part of the "treatment works."

The last inquiry is whether discharge "into a navigable water of the United States" requires proof of fact other than disposal which "would result in any pollutant from such sewage sludge entering the navigable waters." In the instant case, the jury found the defendant guilty of count two, which required the jury to find that the sewage sludge entered a navigable waterway. This finding encompasses a finding that the discharge "would result in any pollutant from such sewage sludge entering the navigable waters," as charged in count two.

It is true, as the government contends, that the defendant could have violated one of the statutes by engaging in conduct that would not constitute a violation of the other. Such a hypothetical possibility, however, is not controlling, especially in light of the modification to the *Blockburger* test which the Supreme Court applied in *Whalen* and *Vitale* to statutes which define several, alternative elements. This Court must analyze the statutes by viewing only the elements that apply to the case at hand in light of the prosecution and defense theories. The Court concludes that because count one does not include proof of a fact not required in count two, and because count two does not include proof of a fact not required in count one, conviction under both statutes violates the Double Jeopardy Clause.

When multiple convictions thus violate the Double Jeopardy Clause,

the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Con-

gress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense.

*Ball*, 470 U.S. at 864, 105 S.Ct. 1668. Accordingly, the Court will vacate the conviction on count two of the indictment.

### B.

Counts three and four of the indictment both charge violations of 33 U.S.C. 1319(c)(4). Count three states:

On or about June 9, 1997, in the Eastern District of Michigan, Northern Division, **MICHAEL J. KUHN,** defendant herein, did knowingly cause false material statements and representations to be made in records required to be maintained under the Clear Water Act, in that **MICHAEL J. KUHN** knowingly caused an employee of the Bay City Wastewater Treatment Plant under his supervision to materially falsify the records of the treatment plant regarding test results obtained on influent samples from the Bay City Wastewater Treatment Plant done on or about May 3, 1997, in violation of Title 33, United States Code, section 1319(c)(4) and Title 18, United States Code, section 2.

Count four states:

On or about June 10, 1997, in the Eastern District of Michigan, Northern Division, **MICHAEL J. KUHN,** defendant herein, did knowingly make a false material statement, representation and certification in a discharge monitoring report filed under the Clean Water Act, in that **MICHAEL J. KUHN** knowingly filed with the Michigan Department of Environmental Quality a discharge monitoring report with attachments containing materially false information regarding the content of the influent to the Bay City Wastewater Treatment Plant found in testing done on or about May 3, 1997,

in violation of Title 33, United States Code, section 1319(c)(4).

The defendant alleges that count three and count four charge him with the same crime, as a principal in count four and as an aider and abettor in count three. The defendant argues that Congress did not intend for multiple punishment in situations like the instant case. However, the defendant does not point to any statutory language, legislative history, or case law which supports this position.

The Supreme Court has stated that "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction." *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 71 L.Ed. 505 (1927). In *Albrecht*, the defendants claimed the conviction of both possession and sale of liquor violated that the Double Jeopardy Clause. The *Albrecht* Court noted that

> possessing and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession, or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense.

*Id.* Because the Court is unable to determine the legislative intent when it enacted § 1319(c)(4), the Court must analyze the elements of the charged crimes in counts three and four.

As noted above, in *Pandelli*, the Sixth Court described the modification to the *Blockburger* test which the Supreme Court described in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Pandelli*, 635 F.2d at 537–39. The *Pandelli* Court recognized that

> a statute that is multi-purposed and written with many alternatives, or is vague and unspecific, may have many meanings and a wide range of deterrent possibilities. Its meaning is more difficult to grasp in the abstract. The meaning of the statute, the precise definition of the criminal cause of action, depends more heavily on prosecutorial and judicial interpretation. The content and relationship of various criminal causes of action created by complex, overlapping, and vague statutes are worked out over time by successive judicial decisions made in response to the theories of prosecutors and defense lawyers in the cases at hand. It therefore makes more sense to ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand.

*Id.* at 538–39.

The *Pandelli* Court instructed that the court should isolate the applicable elements of the statute, eliminating inapplicable provisions. *Id.* at 539. In the instant case, count three charged that the defendant "knowingly [caused a] false material statement [to be made] . . . in [a] record . . . required to be maintained under this chapter." 33 U.S.C. § 1319(c)(4). Count four charged that the defendant "knowingly [made a] false material . . . certification in [a] . . . report . . . filed . . . under this chapter." *Id.* Count three charges that the defendant "caused" an employee to falsify a report on June 9, 1997. Count four alleges that the defendant certified the report on June 10, 1997 knowing that it was false. Since there are different elements in each count, the Double Jeopardy Clause is not violated.

The facts in the instant case are distinguishable from the facts in *Ball v. United States, supra.* In *Ball,* the Supreme Court held that the Double Jeopardy Clause was violated when a felon was charged with both receipt of a firearm by a felon and possession of a firearm by a felon as a result of a single act. In the instant case, the defendant was charged with the same statutory section for two separate acts.

Further, the statute defines alternative elements and prohibits two separate evils. First, the statute prohibits making false reports maintained within a treatment facility. In this case, count three charges that the defendant made and maintained a false report and procured the complicity of another employee in the criminal undertaking. Count four states that the defendant "certified" a report, albeit the same one referenced in count three. However, the act of "certification" implies publication and vouching for the false data outside the facility itself. The two acts occurred on separate days, and constituted separate and discrete violations of § 1319(c)(4).

Therefore, because count three does require proof of a fact not required in count four, conviction of both counts does not violate the Double Jeopardy Clause.

### III.

The single act of pumping sewage sludge into the outfall ditch in August 1996 did not give rise to separate violations under the facts of this case and in light of the theories of the parties. Two convictions resulting from that single act would violate the Double Jeopardy Clause. On the other hand, procuring a false report, and later certifying that same report as true, constitute two separate, punishable criminal acts consistent with the Constitution.

Accordingly, it is **ORDERED** that the defendant's motion for judgment of acquittal [dkt # 57] is **GRANTED IN PART AND DENIED IN PART.** The defendant's conviction of the charge contained in Count Two of the indictment is hereby **VACATED,** the defendant is acquitted of the offense charged in Count Two of the indictment, and Count Two of the indictment is dismissed. The motion is **DENIED** in all other respects.