Robert Earl PRYOR, Petitioner-Appellee,

v.

James H. ROSE, Warden,
Respondent-Appellant.

No. 81–5401.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1982.

Decided Jan. 26, 1983.

As Amended Feb. 2, 1983.

Opinion on Granting of Rehearing En
Banc March 21, 1983.

William M. Leech, Jr., Atty. Gen. of Tenn., Jennifer Helton Small, J. Andrew

Hoyal (argued), Asst. Attys. Gen., Nashville, Tenn., for respondent-appellant.

William H. Farmer, Federal Public Defender, Ross E. Alderman (argued), Nashville, Tenn., for petitioner-appellee.

Before JONES and KRUPANSKY, Circuit Judges, and GILMORE, District Judge.*

GILMORE, District Judge.

Petitioner, Robert Earl Pryor, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Two issues are presented to the Court. The first is whether the petitioner was subjected to double jeopardy under the Double Jeopardy clause of the Fifth Amendment.[1] The second issue relates to the effect under 28 U.S.C. § 2254(d) of a determination of the Tennessee Court of Appeals that the petitioner was not subjected to double jeopardy. The court found that the defendant was subjected to double jeopardy and set aside one of the sentences imposed upon him. It also found that it was not bound by the findings of the Tennessee Court of Criminal Appeals. We affirm.

I

Pryor was the subject of two State indictments. The first count of Indictment B–60818 charged that petitioner:

did unlawfully, wilfully, feloniously, maliciously, deliberately and premeditately make an assault upon the body of John L. Winbush with a metal walking cane, with felonious intent, then and there, to unlawfully, wilfully, feloniously, maliciously, deliberately and premeditatedly kill and murder the said John L. Winbush, and to commit the crime of Murder in the First Degree.

Indictment B–60819 charged that petitioner:

did unlawfully, feloniously, violently and forcibly by Use of A Deadly Weapon to-wit: a metal walking cane, make an assault on the person of John L. Winbush and putting him in great danger and bodily fear for his life, and did then and there unlawfully and feloniously and with force and violence aforesaid, steal, take and carry away from the person of John L. Winbush, the sum of Four and No/100 ($4.00) Dollars ... with intent feloniously to convert the same to his own use and to deprive the true owner thereof.

Both indictments were predicated on an occurrence which was ultimately summarized by the victim at trial as follows:

A. Okay, uh-huh. He called me—came up to me just like that, so I turned and walked away from him. So he hit me right here (indicating). It burst this a loose and knocked me down, got blood all in my eyes and everything. 'Course however this has been sewed up now, you know. Since I went to the hospital and everything. Then after he knocked me down he started beating on me with that pipe, that stick, or whatever you call it, you know. And ah, the money that I had in my front pocket he went in there and got that.

* * * * * *

[metal cane identified]

A. Yeah, that's what he had. He had it in his hand when he called me up to him. That's right, show did and start beating me with this thang. After he knocked me down, kept on beating me and he told me, I'm going to kill you man, I'm going to kill you. Give me some more money.

* * * * * *

A. Well, he said, I'm going to kill you, ... I'm going to kill you. He kept saying that.

Q. All right sir,—

A. He kept telling me that, at the time he was beating me with this (indicating)

* * * * * *

Q. Mr. Winbush, how many times were you struck with this pipe?

* The Hon. Horace W. Gilmore, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; ..." Amendment V, United States Constitution.

A. Well, all I know, I was hit lots of times with that pipe. I couldn't just say exactly how many times. I know I was hit lots of times with it.

At the conclusion of trial, the jury rendered a verdict finding the petitioner guilty on the second indictment of assault with intent to commit robbery with a deadly weapon, a lesser included offense in the charge of robbery with a deadly weapon. The jury fixed punishment on this indictment as imprisonment for not less than 10 years nor more than 21 years. On the first indictment, the jury found the petitioner guilty of assault with intent to commit murder in the first degree, as charged, and fixed his punishment as not less than 6 nor more than 21 years. The trial judge ordered that the sentences in the two cases be served consecutively.

The district court below granted the writ of habeas corpus as it pertained to the conviction for assault with intent to commit murder.

## II

We start with the basic proposition that the constitutional protection against double jeopardy encompasses three guarantees: 1) protection against a second prosecution for the same offense after acquittal; 2) protection against a second prosecution for the same offense after conviction; and 3) protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

This case involves the third guarantee. Petitioner argues that his convictions and consecutive sentencing on both robbery and assault with intent to commit murder in the first degree were multiple punishments for the same offense, and thus violated the constitutional protection against double jeopardy.

In *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the United States Supreme Court adopted the test in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining whether two offenses are the same

for the purpose of barring cumulative punishment. In *Blockburger,* the Court held:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...."

*Brown* 432 U.S. at 166, 97 S.Ct. at 2225.

Thus, *Blockburger* focuses on the proof necessary to prove the statutory elements of each offense, rather than the actual evidence to be presented at trial. See also *Ianelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

Two subsequent opinions of the United States Supreme Court have modified the analysis and meaning given to *Blockburger.* See *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). As pointed out in *Pandelli v. United States,* 635 F.2d 533 (6th Cir.1980), the most recent Sixth Circuit case on the subject, and the case which we find controlling both in terms of result and analysis, *Whalen* and *Vitale* redefine the task faced by courts in reviewing double jeopardy claims. *Pandelli* instructs that, before applying the *Blockburger* test, the court must narrow the statute to be analyzed until it includes only the *relevant alternatives* to the case at hand. The Court said, referring to the reviewing court:

> It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would.

*Id.* at 537 (footnotes omitted).

In discussing the matter further in light of *Vitale,* the Court said:

> In *Vitale* it recognized that that process of reformulation could be applied to distinguish multiple possible meanings contained within a single word. The two cases redefine the task faced by courts

reviewing double jeopardy claims: *before applying the Blockburger test they must narrow the statute to be analyzed until it includes only the alternatives relevant to the case at hand.*

*Id.* at 538 (Emphasis added).

*Pandelli* reiterates the point that the *Blockburger* test in its modified form still focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial, or the facts alleged in a particular indictment:

> Courts have always looked to the *law* the indictment claims the defendant violated.... What the reviewing court must now do in applying *Blockburger* is to go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail.

*Pandelli* at 538.

We must first deal with Tennessee's First Degree Murder Statute. This is the relevant statute in applying the *Blockburger* test because under Tennessee law petitioner could not be convicted of assault with intent to kill unless he would have been guilty of first degree murder if the victim had died. The statute is what *Pandelli* calls a "multi-purpose criminal statute" because it seeks to punish as first degree murder different types of criminal acts, including intentional, deliberate, premeditated killings, and felony murders.

The Tennessee Statute provides as follows:

> 39.2402. Murder in the first degree.—An individual commits murder in the first degree if:
> (1) he commits a willful, deliberate, malicious and premeditated killing or murder;
> (2) he commits a willful, deliberate, and malicious killing or murder, and:
> (a) the victim is an employee of the department of correction having custody of the actor.
> (b) the victim is a prison inmate in custody with the actor,
> (c) the victim is known to the actor to be a peace officer or fireman acting in the course of his employment,
> (d) the victim is a judge acting in the course of his judicial duties,
> (e) the victim is a popularly elected public official,
> (f) the offense is committed for hire; or,
> (g) the offense is committed while attempting to evade law enforcement officials;
> (3) he hires another to commit a willful, deliberate, malicious and premeditated killing or murder, and such hiring causes the death of the victim; or
> (4) he commits a willful, deliberate and malicious killing or murder during the perpetration of any arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb. *Tenn. Code Ann.* § 39.2402 (1974).

Since the first degree murder statute is a "multi-purpose statute" under *Pandelli,* each provision must be considered as a separate offense. The "separate offense" of felony murder, ¶ 4, is "relevant" within the meaning of *Pandelli* because it is part of the first degree murder statute and the state trial judge instructed the jury that it was relevant. The state trial judge, in defining murder in the first degree, stated:

> An individual commits murder in the first degree if: (1) he commits a willful, deliberate, malicious and premeditated killing or murder; or (4) he commits a willful, deliberate and malicious killing or murder during the perpetration of any arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb.

The State also introduced evidence supporting a felony murder theory. Comparing the felony murder offense with the robbery offense under the *Blockburger* test, we find it possible that petitioner received cumulative sentences for the *same offense*—the underlying felony, in this case, a robbery: "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of a contrary legislative intent." *Whalen v.*

*United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980).[2]

In his charge, the state trial judge gave a lengthy and accurate charge on premeditation, but he left with the jury the ability to find the defendant guilty of assault with intent to kill by using the underlying robbery to supply premeditation. This is where we have real difficulty with the case, and where it appears that double jeopardy has attached.

Under *Pandelli,* we simply cannot eliminate the felony murder alternative as a matter of statutory interpretation. It clearly applies in the instant case as a matter of law, because Tennessee law provides that the premeditation can be supplied by the commission of a felony robbery to establish first degree murder. Even going further, as *Pandelli* commands, looking at the "legal theory of the case" or the "elements of the specific cause of action for which defendant was convicted," there is no way felony murder can be eliminated as a "relevant" alternative under *Pandelli* and as a separate offense which must be examined under *Blockburger.* The judge's jury instructions, which eliminated all of the other first degree murder alternatives save ¶ 1 and ¶ 4, only reinforce the argument that ¶ 4, the felony murder portion, was a "relevant" alternative at trial. The state cannot argue that premeditation was a key part of its case and at the same time explain the presence of the felony murder instruction.

*Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), in particular, makes it clear that a court does not simply look abstractly at the statute in question. It must look at its actual bearing on the case and the legal theories used by the state to convict. There is just no way the state can conclusively show that the jury did not rely on the robbery to provide the intent to convict on the count of assault with intent to kill and that felony murder was not a legal theory used by the state to convict. The judge's instructions clearly would have permitted that.

It is argued that because the felony murder portion, ¶ 4 of Tennessee's statute, has language containing the words "willful and deliberate," it is somehow different from a typical felony murder statute and that as a matter of law the jury had to find some kind of intent to kill in order to convict. We find there is no support for this proposition in the Tennessee case law. Tennessee case law indicates that ¶ 4 is to be interpreted as a typical felony murder statute in which intent, deliberation, and premeditation are supplied by the commission of the underlying felony. In *Tosh v. State,* 527 S.W.2d 146 (Tenn.Cr.App.1975), it was held that it was not necessary to prove that a killing was willful, deliberate, and premeditated to convict for first degree murder under Section 39–2402(4) even though these words were used in the statute defining the crime. *See also Claiborne v. State,* 555 S.W.2d 414 (Tenn.Cr.App.1977), *cert. denied* Sept. 6, 1977, where first degree murder was found under ¶ 4 even where deliberation and premeditation were absent. To the same effect is *Phillips v. State,* 455 S.W.2d 637, 2 Tenn.Cr.App. 609 (1970), where it was held that a killing in the commission of a robbery constituted first degree murder regardless of whether premeditation or malice were specifically proven.

It is clear that the legislature of Tennessee intended to punish premeditated murder and robbery separately, and there is no

---

**2.** We believe that the recent Supreme Court decision in *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), does not change the result in the instant case. In *Hunter,* the Supreme Court found that the ban on double jeopardy is not violated where the state legislature specifically authorizes criminal punishment under two statutes. —— U.S. at ——, 103 S.Ct. at 679. The state statute in question specifically stated: 'The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed ...' *Id.* ——, 103 S.Ct. at 676. In the instant case, there is no such specific indication of legislative intent. We thus believe that we must still be guided by the clear command of the language in *Whalen* that in the absence of a *clear indication of a contrary legislative intent* double jeopardy will still be found. —— U.S. at ——, 103 S.Ct. at 677. Judge Krupansky also agrees that *Missouri v. Hunter* does not affect the outcome of this case.

indication that it intended to punish robbery twice,[3] which was made possible here by supplying a felony murder instruction along with an intent to kill instruction. The state judge could easily have complied with legislative intent here simply by not allowing a felony murder instruction to be given.

It is contended that the position that the jury could have relied upon felony murder is only "conjecture" or is "arbitrary," but we believe it is none of these labels. Felony murder is part of the law of Tennessee, given to the jury by the state trial judge charged with instructing the jury as to the law, and upon which the jury was to rely in deciding defendant's guilt or innocence. Even if petitioner's argument is "conjecture," which we do not believe it is, it must be conceded that the state's argument is just as much conjecture. Theoretically, the evidence *could* support a conviction with a separate finding of the requisite intent, but *Whalen, Vitale,* and *Pandelli* especially say that this is not the inquiry.

A court is not to engage in theoretical speculation as to what facts the jury might or might not have found in order to support an offense. This gives the court too much discretion, a discretion the ban on double jeopardy is designed to eliminate. On the contrary, the court must examine the statute and the law given to the jury as a starting point. We feel that the Tennessee Court of Criminal Appeals engaged in pure speculation as to what the jury might or might not have found. *See* Opinion at p. 293, *infra.* The jury could just as well have seen the entire incident as one robbery and used that robbery via felony murder to find assault with intent to kill. This is just as reasonable (or just as speculative) an interpretation as the other. If there is conjecture on both sides, one should err on the side of the constitutional protection against double jeopardy.

As pointed out in *Pandelli,* the purpose of the double jeopardy clause is to prevent trials and punishments that do not advance the deterrent and retributive purposes of the criminal justice system. Cumulative punishments under several statutes that punish the same basic elements of wrongful conduct have little additional deterrent value but simply impose unnecessary additional pain on defendants and wasteful costs on society. It appears to us that is what happened in this case. Any doubt should be decided against allowing a defendant to be punished for robbery twice. Although the jury *could have* found both intent to kill and robbery, a court should not engage in this kind of speculation in face of the double jeopardy clause.

Furthermore, a decision to affirm the district court will produce no intrusive result. Petitioner will still serve a sentence for assault with intent to rob, and the deterrent and punishment purposes of the Tennessee law and the jury decision to punish him will be respected. Such a decision does not require any intrusive second guessing of the trial judge of a state court as to its factual findings. It concerns improper jury instructions and interpretation of the relevant law, which are always subject to appellate and constitutional review.

As the law stands now under the decisions of the Supreme Court in *Whalen* and *Vitale,* and under *Pandelli* in the Sixth Circuit, a judge must simply not give a felony murder instruction when it is possible to also have a conviction for the underlying felony. The State of Tennessee can continue to convict for both a felony and for assault with intent to murder as long as the felony murder instruction is not given and the State succeeds in proving intent, deliberation, and premeditation. This will preserve both the constitutional protection against double jeopardy and the statutory scheme established by the State of Tennessee for punishing criminal offenses.

Thus, it is clear that under Tennessee law, the evidence that could support a conviction for robbery is all that is needed to support a conviction of assault with intent to kill. The same facts needed to convict on one could convict on the other, and the jury could have convicted defendant of assault with intent to murder without making any

---

**3.** *Cf. Missouri v. Hunter, supra.*

specific finding of intent. Therefore, petitioner was subjected to double jeopardy.

### III

Finally, we must deal with the finding of the Tennessee Court of Criminal Appeals that there were two separate and distinct offenses. The question here is whether such determination is entitled to a presumption of validity under 28 U.S.C. § 2254(d).

The Tennessee Court of Criminal Appeals rejected Pryor's assignment of error predicated upon double jeopardy, stating:

> The proof accredited by the jury verdict clearly establishes that there was an assault and taking of the money from the victim's front pocket. Then, after appellant had knocked the victim down and gotten his money, appellant told the victim 'I'm going to kill you, man, I'm going to kill you. Give me some more money.' The appellant had committed the assault with the intent to commit robbery when the money was taken.
>
> Appellant resumed beating the victim and expressed the intent to kill. The jury adduced from the facts the appellant intended to carry out this new exclamation. There were two separate and distinct offenses committed. *State v. Hudson*, 562 S.W.2d 416 [Tenn.]; *State v. Black*, 524 S.W.2d 913, 920, 929 [Tenn.].

(Opinion at 3).

Appellant contends that this decision of the Tennessee Court of Criminal Appeals is a factual determination which must be afforded a presumption of validity pursuant to 28 U.S.C. § 2254(d), which provides in pertinent part:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a

State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—(thereafter follow eight exceptions which the instant parties concede are inapplicable).

■ Section 2254(d) is applicable only to findings of fact made by a state trial or appellate court. It does not apply to determinations of law. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Sumner v. Mata II*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1980). The finding of the Tennessee Court of Criminal Appeals that there were two separate offenses is entirely a legal and not a factual finding, and is erroneous as a matter of law. That court's examination of the facts in the case, in order to find separate offenses, is precisely the type of legal analysis *Whalen, Vitale,* and *Pandelli* reject.

■ The principles of federalism which underlie § 2254(d) extend only to factual determinations and not to conclusions or inferences which would be dispositive of claims predicated upon constitutional guarantees. There is no presumption of correctness on federal constitutional determinations made by state trial and appellate courts, and the determination of the Tennessee court was such.

For the reasons given, the judgment of the district court is affirmed.

KRUPANSKY, Circuit Judge (concurring in part and dissenting in part).[1]

Since the trial court proceedings, considered as a whole, compel the conclusion

---

[1] I concur with the majority that the Tennessee Court of Criminal Appeals' determination that two separate and distinct offenses had been committed does not constitute a factual determination entitled to a presumption of validity under 28 U.S.C. § 2254(d).

that the applicable statutory provisions to be compared for purposes of *Blockburger* analysis are the statutes upon which the defendant was *indicted,* rather than upon the statutes which the majority apparently speculates as having been interposed through jury instructions, I must respectfully dissent.

The pertinent inquiry in the action *sub judice* is whether Pryor has been subjected to multiple punishments for the same offense in violation of the double jeopardy clause. Of this constitutional guarantee, Judge Blackmun has recently commented:

> The *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended. It serves, in my considered view, nothing more. "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

*Whalen v. United States,* 445 U.S. 684, 697, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring in judgment). Justice Blackmun additionally suggested:

> I believe that the Court should take the opportunity presented by this case . . . to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed.

*Id.* 100 S.Ct. at 1441. Blackmun's position was adopted by the Supreme Court in its most recent pronouncement upon multiple punishments within the context of the double jeopardy clause:

> Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.

*Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981) (footnote omitted). It is incumbent upon this Court, therefore, to ascertain and defer to legislative intent. *See also: Pandelli v. United States,* 635 F.2d 533, 536 (6th Cir. 1980).

Legislative intent may not be defined without first identifying the distinct criminal offenses upon which the allegedly unconstitutional imposition of multiple punishments has been predicated. Pryor was indicted upon the offenses of (1) assault with intent to commit premeditated murder in the first degree (Indictment B–60818, First Count) and (2) assault with intent to commit robbery with a deadly weapon (Indictment B–60819). The criminal offense incorporated in Indictment B–60818 is proscribed by T.C.A. § 39–604 [2] and § 39–2402(1) [3] whereas the criminal offense incorporated in Indictment B–60819 is proscribed by T.C.A. § 39–607 [4] and § 39–3901. [5] Confronted with a silent legislative history of these pertinent statutory provisions, the principles of statutory construction enunciated in *Blockburger* for identifying multiple punishments arising from the same offense attach:

**2.** *39–604. Assault with intent to commit murder—Penalty*—Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, . . . shall, on conviction, be imprisoned. . .

**3.** *39–2402. Murder in the first degree*—An individual commits murder in the first degree if: (1) he commits a willful, deliberate, malicious and premeditated killing or murder; * * *

**4.** *39–607. Assault with intent to commit robbery—Penalty*—Whoever shall assault another, with intent feloniously and willfully to commit a robbery, shall, on conviction, be imprisoned. . .

**5.** *39–3901. Robbery—Penalty*—Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear. * *

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See also: Albernaz, supra,* 101 S.Ct. at 1141; *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Ianelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 1285, 43 L.Ed.2d 616 (1974); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). Application of the *Blockburger* criteria to the case at bar compels the conclusion that the Tennessee legislature intended to punish assault with intent to commit premeditated murder and assault with intent to commit robbery with a deadly weapon as separate violations. Assault with intent to commit robbery with a deadly weapon includes among its elements (1) intent to commit robbery, *i.e.,* intent to feloniously and forcibly take from the person of another goods or money of any value by violence or by putting the person in fear and (2) an overt act involving the use of a deadly weapon. *See T.C.A.* §§ 39–607, –3901, *supra.* Contrawise, assault with intent to commit premeditated murder includes among its elements (1) intent to commit premeditated murder, *i.e.,* a willful, deliberate, malicious and premeditated killing and (2) an overt act. *See: T.C.A.* §§ 39–604, –2402(1), *supra.* Clearly each indicted criminal offense "requires proof of an additional fact which the other does not." Indeed, the majority concedes "[i]t is clear that the legislature of Tennessee intended to punish premeditated murder and robbery separately." In sum, when the separate and distinct statutory provisions upon which Pryor was indicted are construed as the applicable statutory provisions which must be "compared" for *Blockburger* analysis, no violation of double jeopardy guarantees has been sustained by Pryor.

The majority, however, keystones its decision upon the erroneous conclusory and legally unsupported hypothesis that the trial court's jury instruction served to interpose Tennessee's statutory "felony-murder" provision into the trial thereby evoking a *Blockburger* comparative analysis of said "felony-murder" statute with the statutory provision proscribing against the separate and distinct offense of assault with intent to commit robbery with a deadly weapon as charged in Indictment B–60819. Distilling Tennessee's first degree murder statute to its "relevant" provision of felony-murder under the principles of *Whalen, Vitale* and *Pandelli,* the majority concludes that Pryor has been subject to double jeopardy since, under *Blockburger* analysis, "the evidence that could support a conviction for robbery is all that is needed to support a conviction of assault with intent to kill." The majority has conspicuously failed to reference any legal precedent in support of the proposition that statutory provisions other than those upon which the defendant had been indicted may be compared under *Blockburger* to ascertain if the defendant was subjected to cumulative punishments for the same offense, nor does *Whalen* and its progeny support such a proposition. On the contrary, without exception, *all* Supreme Court pronouncements in this constitutional area have compared the two statutory provisions upon which the defendant had been indicted. *See: Brown v. Ohio, supra; Whalen v. United States, supra; Albernaz v. United States, supra; Illinois v. Vitale, supra; Blockburger v. United States, supra. See also: Pandelli v. United States, supra.* Collectively, this authority clearly dictates that a Court reviewing a double jeopardy assignment of error is required to reduce each of the statutory provisions upon which the defendant was indicted to its relevant segment for purposes of *Blockburger* analysis. However, no language in any of these cases infers that a reviewing court may abandon for *Blockburger* purposes the statutes upon which the defendant was indicted and substitute as the "relevant" statutes those which have in some manner been interjected into the trial. Simply, the *Whalen* line of authority is inapposite to rather than dispositive of the double jeopardy issue before this Court.

The undisputed facts of record, which command the inescapable conclusion that no rational juror could have concluded that Pryor was on trial for anything other than assault with intent to commit *premeditated* murder, simply cannot be ignored. This

trial attained its genesis in two indictments. The very existence of Indictment B–60818, charging Pryor with assault with intent to commit premeditated murder, discloses that the state, subsequent to investigating the criminal offense and exercising its prerogative to seek a grand jury indictment upon those charges which were deemed appropriate, presented evidence to a grand jury sufficient to support an indictment charging assault with intent to commit premeditated murder. Indictment B–60818 contained *no* alternative charge of assault with intent to commit first degree murder during the perpetration of a felony.

At trial, the evidence overwhelmingly supported all of the elements of the offenses as incorporated in the indictments. The victim and eyewitness to the criminal act testified as follows:

A. Okay, uh-huh. He called me—came up to me just like that, so I turned and walked away from him. So he hit me right here (indicating). It burst this a loose and knocked me down, got blood all in my eyes and everything. 'Course however this has been sewed up now, you know. Since I went to the hospital and everything. Then after he knocked me down he started beating on me with that pipe, that stick, or whatever you call it, you know. And ah, *the money that I had in my front pocket he went in there and got that.*

\* \* \* \* \* \*

[metal cane identified]

A. Yeah, that's what he had. He had it in his hand when he called me up to him. That's right, show did and start beating me with this thang. After he knocked me down, kept on beating me and he told me, *I'm going*

*to kill you man, I'm going to kill you. Give me some more money.*

\* \* \* \* \* \*

A. Well, he said, *I'm going to kill you,* black motherfucker, *I'm going to kill you.* He kept saying that.

Q. All right sir,—

A. He kept telling me that, at the time he was beating me with this (indicating).

\* \* \* \* \* \*

Q. Mr. Winbush, how many times were you struck with this pipe?

A. Well, all I know, *I was hit lots of times with that pipe. I couldn't just say exactly how many times. I know I was hit lots of times with it.*

Accordingly, testimony of the victim, John Winbush (Winbush), whose veracity was not challenged, conclusively evidences that Pryor violently assaulted his victim with a metal cane, a dangerous weapon,[6] with intent to feloniously and forcibly take money from Winbush's person. Such evidence supports a conviction upon the criminal offense of assault with intent to commit robbery with a deadly weapon as charged in Indictment B–60819.

Subsequent to robbing Winbush, Pryor commenced the conduct upon which Indictment B–60818 was predicated, as demonstrated by Pryor's vicious and repeated striking of his helpless victim, who was lying on the ground, while exclaiming his intention to kill: "I'm going to kill you, man, I'm going to kill you. Give me some more money." When no further money was tendered, Pryor continued to relentlessly beat his victim. This language and conduct fully supports the conclusion that Pryor had

---

**6.** The jury charge provided:

"A dangerous or deadly weapon is any weapon or instrument which, from the manner in which it is used or attempted to be be used, is likely to produce death or cause great bodily harm.

In determining what is a dangerous weapon, the test is whether or not the weapon used would be likely to cause death; if one strikes another with a weapon with sufficient force, and if the one struck might die as a result of the attack made on him, this is a deadly weapon."

formed an intent to kill Winbush and had proceeded to the best of his ability to execute this intent. Pryor assaulted Winbush with the intent to commit premeditated murder as charged in Indictment B–60818.

The theory of the state's case in Indictment B–60818 was founded on premeditated murder. The state produced no evidence relevant to felony-murder. Nor did the state, in closing argument, submit or suggest any legal theory or factual evidence which could have encouraged or stimulated the jury to return a verdict upon felony-murder.

The jury instructions reflected a complete, accurate and concise statement of applicable legal principles devoid of constitutional infirmities. In defining first degree murder the trial court charged directly from the applicable statute:

> An individual commits murder in the first degree if (1) he commits a willful, deliberate, and malicious and premeditated killing or murder; or (4) he commits a willful, deliberate and malicious killing or murder during perpetration of any arson, rape, robbery, etc.

The passing allusion to felony-murder within the definition of first degree murder was not objected to by Pryor at any stage of the trial court proceedings although the record fully discloses that a meaningful opportunity to object had been presented.[7] More pertinently, this is the only causal reference to felony-murder during the entire trial or jury instructions. Upon defining first degree murder, the trial judge thereupon immediately distinguished felony-murder from premeditated murder with his instruction specifying the elements of the latter offense with the following comprehensive language:

> The distinctive feature of murder in the first degree is premeditation, and involves a previously formed design, or actual intention to kill. It is not necessary that such design should have been conceived or preexisted in the mind for any definite period of time anterior to its

execution. It is sufficient if it precede the actual assault, howsoever short the interval of time may be; for the length of time is not the essence of this element of this offense. And the purpose to kill is no less premeditated, in the legal sense of the term, if it were deliberately formed but a moment before the killing, than if it had been formed an hour before. The mental state of the assailant at the time, rather than the length of time the act may have been premeditated, is the material point to be considered. The question of importance is, "Was the mind of the assailant, at the moment of the killing, so far free from excitement or passion as to be capable of premeditating, as before explained, and was the death of the party slain the object sought to be accomplished by the slayer?"

Detailed instructions were provided delineating the lesser included offenses of Murder in the First Degree, assault with intent to commit robbery with a deadly weapon (as charged in Indictment B–60819) and its lesser included offenses. Finally, the jury was specifically instructed to render a verdict on only those charges incorporated in the indictments:

> When you consider your verdict in indictment # 60818 you will first inquire, Is the defendant guilty of an Assault with Intent to Commit Murder in the First Degree *as charged* in the First Count of the indictment? * * * (emphasis added).

The following verdict was returned by the jury:

[T]he Jury upon their oath do say:

*DOCKET NO: B–60818:* "We, the jury, find the defendant guilty of an assault with intent to commit murder in the First Degree *as charged in the first count of the indictment* and fix his punishment at imprisonment in the state penitentiary for not less than 6 years nor more than 21 years."

*DOCKET NO: B–60819:* "We, the Jury, find the defendant guilty of assault with intent to commit robbery with a deadly

---

**7.** Other sections of the jury instructions had been challenged both before the jury retired to deliberations and subsequent thereto through a motion for a new trial.

weapon *as charged in the indictment* and fix his punishment at imprisonment in the penitentiary of the state for not less than 10 years nor more than 21 years." (emphasis added).

The record counsels that the jury was provided access to the indictments during deliberations.

In sum, examination of the trial proceeding in its entirety compels a finding that no rational juror could have concluded that Pryor was on trial for anything other than assault with intent to commit premeditated murder and assault with intent to commit robbery with a deadly weapon as charged in the Indictments. Nor could any rational juror have concluded that the jury instructions authorized a verdict of "guilty" of assault with intent to commit first degree murder as charged unless the evidence supported, beyond a reasonable doubt, a finding of premeditation. The pertinent statutory provisions for purposes of *Blockburger* analysis, therefore, were those upon which Pryor was *indicted*. Since, as aforenoted, the Tennessee legislature clearly contemplated assault with intent to commit premeditated murder and robbery as separately punishable offenses, the trial court did not exceed its legislative authority by imposing punishments for each offense and Pryor has sustained no abrogation of double jeopardy guarantees. *Albernaz, supra,* 101 S.Ct. at 1145.

The petition for a writ of habeas corpus should be denied.

ORDER

A majority of the Judges of this Court in regular service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:

The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this Court, to stay the mandate and to restore the case on the docket as a pending appeal.

Accordingly, it is ORDERED that the previous decision and judgment of this Court is vacated, issuance of the mandate is stayed and this case is restored to the docket as a pending appeal. The Clerk will direct the parties concerning the filing of supplemental briefs.