Stanley L. **DAVIS**, Petitioner-Appellee,

v.

Robert **HERRING**, Sheriff of Lee County, Mississippi and Edwin L. Pittman, Attorney General of the State of Mississippi, Respondents-Appellants.

No. 83–4421.

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1986.

---

10. 26 U.S.C. § 6334(a)(3) (1982).

Edwin L. Pittman, Atty. Gen., Bill Patterson, Donald G. Barlow, Jackson, Miss., for respondents-appellants.

Joe Ray Langston, (Court-appointed), Duncan Lott, (Court-appointed co-counsel), Booneville, Miss., for petitioner-appellee.

Before RUBIN, RANDALL and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The habeas corpus petitioner fired his pistol into a tavern, killing one of the occupants. Tried for murder, but convicted only of the lesser offense of manslaughter, he was subsequently indicted for the separate felony of shooting into an occupied building based on the same criminal episode. He objected on double jeopardy grounds, and, after exhausting his state remedies, obtained an injunction against the second prosecution in federal court. Although the record of the jury charge is incomplete, the murder statute under which he was tried requires that, in the absence of intent, the killing result from the commission of either a felony or a dangerous and depraved act. In this case, no intent was shown. The underlying act or felony was shooting into an occupied building. Proof of that felony was a necessary element of the charge of murder, and therefore, a lesser included offense for which the petitioner may not be retried. Accordingly, we affirm the judgment of the district court.

I.

On the night of October 27, 1981, Stanley L. Davis started a barroom brawl. The owner of the bar, Wayne Watson, broke up the fight and Davis left. Shortly after midnight he returned driving his pickup truck slowly by, and from it he fired six shots into the bar. One struck and killed Watson.

Davis was indicted for murder, which is defined by the Mississippi code provision, set forth in full in the footnote,[1] as the killing of a human being either with deliberate design to cause death; or when done in the commission of an act eminently dangerous to others and evincing a depraved heart; or when done without intent to kill by a person engaged in the commission of any felony other than those reserved for capital punishment. A separate provision of the Mississippi Code, set forth in the footnote,[2] makes shooting into an occupied

---

1. Miss.Code Ann. § 97–3–19 (1972 & Supp.1985) provides:
   (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
   (a) When done with deliberate design to effect the death of the person killed, or of any human being;
   (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;
   (c) When done without any design to effect death by any person engaged in the commission of any felony other than rape, kidnap-

ping, burglary, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of section 97–5–39, or in attempt to commit such felonies.

2. Section 97–37–29 of the Mississippi Code provides:
   If any person shall willfully and unlawfully shoot or discharge any ... firearm ... into any ... building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby.

building a felony, one of those included in the murder statute.

At trial, no evidence was presented to show that Davis intended to kill Watson, or even that he could have seen the bar's occupants through the windows as he drove by more than one hundred feet away. The trial did not hinge on the purpose of the shooting, but only on whether Davis or his stepson had been the person who fired into the bar.

The record does not contain a transcript of the jury charge, but, in discussing jury instructions with the trial judge, counsel referred to the felony of shooting into an occupied building as an underlying offense that eliminated the necessity of proving intent. The judge commented, "the only evidence we have got of murder is the use of a deadly weapon and shooting into an occupied building which creates a presumption that the jury can consider as being malice.... [T]here was no attempt to kill stated by the defendant nor anyone else in the State's case...." Thus, it is likely that conviction of the murder charge depended on proof of an underlying reckless act or felony.

Both murder and manslaughter charges were given to the jury. It appears, although we cannot be certain, that an erroneous charge was also given, instructing the jury that they must find Davis guilty of manslaughter, rather than murder, if they believed that he shot out the windows of the bar without malice aforethought, and without any intent to kill Watson. Such a charge would have been contrary to the felony-murder provision of the statute. Despite the effort of the prosecution to obtain a murder conviction, Davis was convicted only of manslaughter and sentenced to 18 years of imprisonment.

Four months later, Davis was indicted on the same facts for a violation of the statute making it a felony to shoot a firearm into a building. Davis moved to dismiss the indictment as twice jeopardizing him, but his motion was denied by the Mississippi state courts. Davis then brought a habeas corpus action in federal court to enjoin the second prosecution.

At the evidentiary hearing held before a federal magistrate, the prosecutors and key witnesses who had testified at the murder trial testified that the state would offer in the second trial exactly the same evidence as it had offered at the murder trial. Nothing would be presented that had not already been relied upon to establish the central premise of the murder charge: that Davis had been the person who fired into the tavern. Patently, the prosecutor was not satisfied with the eighteen-year sentence imposed at the first trial and sought a second conviction in order to obtain a consecutive sentence.

The magistrate, in his report, first attempted to ascertain whether the state legislature had intended the two offenses of murder and shooting into an occupied building to be punished separately. Finding no indication of legislative intent either way, he concluded under the test established in *Blockburger v. United States* [3] that each offense required proof of an element that the other did not, and therefore, that the offenses were not the same for double jeopardy purposes. Nevertheless, because the identical evidence would be used at the second trial to prove Davis guilty of an act that was relied upon at, and necessary to, his murder trial, the magistrate found that the second trial was prohibited under the "same evidence" test of *Illinois v. Vitale* [4] and *Brown v. Ohio.* [5]

## II.

The double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." [6] It protects against three different evils: a second prosecution for the

---

**3.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**4.** 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

**5.** 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**6.** U.S. Const., art. V.

same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.[7]

When multiple punishments are imposed at a single trial the propriety of the sentence has consistently been described by the Supreme Court as a matter of statutory construction.[8] If the legislative intent is clear and has been obeyed by the sentencing court, the Constitution requires no more.[9] The Court has, therefore, applied the test of *Blockburger v. United States*[10] as a "rule of statutory construction" to determine whether the legislature intended that the two offenses be punished cumulatively.[11] *Blockburger* upheld the imposition of multiple sentences imposed at one trial, holding that "... the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not."[12] The Court has specified that the *Blockburger* test is to be applied to the elements of proof required by the statute and not to the actual evidence or proof adduced at trial in a given case.[13]

The Court has distinguished, however, between situations involving multiple punishments at a single trial and those involving successive trials for related offenses based on the same criminal conduct.[14] This distinction has been observed by this and other circuit courts, and by various commentators.[15] If a defendant cannot be punished cumulatively at a single trial for two offenses, he cannot be tried successively for them.[16] Multiple punishment analysis, therefore, often resolves successive prosecution cases. But the converse is not necessarily true, for the protection against repeated trials is the "controlling constitutional principle" of the double jeopardy clause. "At the heart of [the double jeopardy clause] is the concern that permitting the sovereign freely to subject the citizen

7. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664 (1969).

8. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 284 (1981); *see also Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535, 542–44 (1983); *Whalen v. United States*, 445 U.S. 684, 701–02, 100 S.Ct. 1432, 1442–43, 63 L.Ed.2d 715, 729–30 (1980) (Rehnquist, J., dissenting); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (1977).

9. In my view, the sounder method of statutory construction would permit the imposition of only a single sentence for a single criminal act, even if the defendant is convicted under more than one statute. *See United States v. Rodriguez*, 612 F.2d 906, 925–30 (5th Cir.1980) (en banc) (Rubin, J., dissenting), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). This view, unfortunately, has not prevailed.

10. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

11. *See, e.g., Albernaz*, 450 U.S. at 337, 101 S.Ct. at 1141; *Whalen*, 445 U.S. at 691, 100 S.Ct. at 1437.

12. 284 U.S. at 304, 52 S.Ct. at 182.

13. *Illinois v. Vitale*, 447 U.S. 410, 416 & n. 6, 100 S.Ct. 2260, 2265 & n. 6, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975); *United States v. Cowart*, 595 F.2d 1023, 1029 (5th Cir.1979); Thomas, RICO Prosecutions and the Double Jeopardy/Multiple Punishment Problem, 78 NW.U.L.Rev. 1359, 1375 & n. 75 (1984).

14. *See, e.g., Garrett v. United States*, —— U.S. ——, 105 S.Ct. 2407, 2415–19, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 697, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring); *Brown v. Ohio*, 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 147, 97 S.Ct. 2207, 2214, 53 L.Ed.2d 168 (1977).

15. *See e.g. United States v. Rodriguez*, 612 F.2d 906, 923 (5th Cir.1980), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Jordan v. Virginia*, 653 F.2d 870, 873 (4th Cir.1980); *United States v. Sabella*, 272 F.2d 206, 211 (2d Cir.1959); Thomas, *supra* note 13, at 1363–64; Note, The Double Jeopardy Clause as a Bar to Reintroducing Evidence, 89 Yale L.J. 962, 966 & n. 24 (1980); Note, Twice in Jeopardy, 75 Tale L.J. 262, 267 (1965); Note, 11 Stan.L.Rev. 735 (1959).

16. *Brown*, 432 U.S. at 166, 97 S.Ct. at 2226; *Jordan v. Virginia*, 653 F.2d 870, 873 (4th Cir. 1980).

to a second trial for the same offense would arm Government with a potent instrument of oppression." [17] With a penal code, a thesaurus, and a little ingenuity, the prosecutor can obtain cumulated punishments that total more than what any single judge, jury, or legislature thought the crime deserved. As Justice Brennan has written,

Given the tendency of modern criminal legislation to divide the phrases [sic] of a criminal transaction into numerous separate crimes, the opportunity for multiple prosecutions for an essentially unitary criminal episode are frightening, and given our tradition of virtually unreviewable prosecutorial discretion concerning the initiation and scope of a criminal prosecution, the potentialities for abuse ... are simply intolerable.[18]

In determining whether a later prosecution is for the same offense as the earlier one, the *Blockburger* test is first applied, for, if there is but one offense under that standard, the Constitution as well as the statute would be violated. While necessary, that test is not dispositive. Even if, under that test, two offenses are sufficiently different to permit the imposition of consecutive sentences, the Court has held that "successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." [19] Although the Court has never fully delineated the exact scope of this additional requirement, it has generally depended on the actual evidence adduced at trial and the plight of the individual defendant, rather than on an abstract investigation of statutory intent.

The additional protection most often granted is the "same evidence" test applied in *In re Nielsen*.[20] Nielsen, a Mormon, challenged an indictment for adultery after he had already been convicted of illegal cohabitation with the same woman. Although adultery and illegal cohabitation were different statutory offenses, the Court stated "the material part of the adultery charge was comprised within the unlawful cohabitation of which the petitioner was already convicted," and held "a conviction or acquittal upon one indictment" bars a later prosecution of another crime if the "evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other." [21]

Although its validity has been attacked, the *Nielsen* test has consistently been applied by the Court in successive prosecution cases involving felony murders such as *Brown v. Ohio*,[22] and *Harris v. Oklahoma*,[23] both decided in 1977. In *Harris*, a defendant convicted of felony murder for a killing committed during the course of an armed robbery successfully invoked the Double Jeopardy Clause to prevent a later prosecution for the armed robbery. Even though the *Blockburger* test was not satisfied, the Court said, "[w]here, as here, conviction of a greater crime cannot be had without conviction of a lesser crime, ... the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." [24]

Later, in *Illinois v. Vitale*,[25] the Court considered whether a driver's conviction for failing to reduce speed barred his later

---

**17.** *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649 (1977).

**18.** *Ashe v. Swenson,* 397 U.S. 436, 452, 90 S.Ct. 1189, 1198, 25 L.Ed.2d 469, 480 (1970) (Brennan, Douglas, Marshall, JJ., concurring).

**19.** *Brown,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6.

**20.** 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

**21.** *Id.* at 188, 9 S.Ct. at 676.

**22.** 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**23.** 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

**24.** *Id.* at 682–83, 97 S.Ct. at 2913 (citation omitted).

**25.** 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

prosecution for killing a person by reckless driving. The Court applied the statutory *Blockburger* test and remanded for a determination whether failure to reduce speed is always necessary to the offense of reckless driving. The Court also applied the same evidence test, however, inquiring whether the state's actual proof of manslaughter at trial would depend on showing a second time that the defendant failed to reduce speed, or if it would depend on some other form of reckless driving. The Court wrote:

> In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris* . . . .[26]

The Court summarized its holding in *Harris* with approval: "a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has already been convicted."[27]

Facing virtually an identical situation last term in *Thigpen v. Roberts,*[28] the majority chose to apply a different test, based on due process rather than double jeopardy. While Justice Rehnquist's dissent charged the majority with sidestepping a direct renunciation of *Vitale*, the Court refused to overrule that case, but held that

whenever a prosecutor "ups the ante" by obtaining an indictment for a more serious crime after a defendant has appealed his first conviction, a presumption of unconstitutional prosecutorial vindictiveness arises. The majority declined to adopt the position of three justices who had earlier expressed the opinion that the "same evidence" test is no longer valid, and who would have relied solely on the *Blockburger* standard in every kind of double jeopardy claim.[29]

### III.

The state argues that, because Davis was convicted of manslaughter, he is protected only from further prosecution of that offense. The jury had the opportunity to return a verdict for murder, however, although it returned only a verdict for the lesser offense. That verdict is an implicit acquittal of the murder charge for double jeopardy purposes.[30] Davis is, therefore, protected from reprosecution for any lesser offense that was included in the murder charge.

The murder charge appears not to have been based on a showing of premeditated intent. Instead, intent was presumed from the commission of a felony or a reckless and dangerous act. While we are uncertain of the exact jury charge, both the judge and counsel, in formulating the charges, referred to the underlying felony. The jury may, therefore, have considered whether Davis committed a shooting felony or the dangerous act of firing into a building in deciding whether or not he was guilty of murder. Further, as Justice Rehnquist has noted in *Garrett v. United States,*[31] and as the Sixth Circuit has de-

---

26. *Id.* at 420, 100 S.Ct. at 2267.

27. *Id.* at 421, 100 S.Ct. at 2267.

28. 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984).

29. *See Illinois v. Zegart, cert. denied,* 452 U.S. 948, 101 S.Ct. 3094, 69 L.Ed.2d 961 (1981) (Burger, C.J., Blackmun & Rehnquist, JJ., dissenting from denial of certiorari).

30. *Green v. United States,* 355 U.S. 184, 186–87, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); *see Lowery v. Estelle,* 696 F.2d 333, 341 (5th Cir. 1983).

31. —— U.S. ——, 105 S.Ct. 2407, 2415–16, 85 L.Ed.2d 764 (1985).

clared when faced with a similar ambiguity, "Courts have always looked to the *law* the indictment claims the defendant violated. If they did not do so, they would not know even what statutes are at issue under the *Blockburger* test." [32]

Looking primarily to the indictment for murder, therefore, the statute required either a killing with premeditated intent, or a killing that occurred in the commission of *any* felony other than certain enumerated felonies reserved for capital punishment. Under the traditional *Blockburger* test, the felony of shooting into an occupied building would not be necessary and essential in every case to a murder conviction, and the crimes would not be lesser and greater included offenses.

*Whalen v. United States* [33] and *Harris* make clear, however, that the *Blockburger* test may be modified in the case of complex statutes to examine only the actual underlying felony.[34] If the murder charge depended on proof of a specific felony, then that felony is a lesser-included offense even though other felonies might have supported a conviction.

The state argues that the murder charge depended not on the felony but on the depraved and dangerous act of firing a gun. The added element of firing the gun into an occupied building would then distinguish the felony for which Davis is now indicted from the act that supported the murder charge. Even if Davis's conduct could be so subdivided, firing a gun is not necessarily a depraved and reckless act regardless of the circumstances. The trial

record makes clear that it was not merely the act of shooting, but the act of shooting into the bar, that established Davis's dangerous behavior.

Even if the first conviction was based solely on that part of the statute criminalizing premeditated murder, reprosecution would be unconstitutional under the same evidence test of *Nielsen* and *Vitale.* Identical evidence at the first trial sufficiently and necessarily established that Davis was guilty of the offense for which the state now seeks a new trial.

The state's case does not rest merely upon a substantial overlap in evidence as it would if the same testimony were to be relied upon to establish two independent crimes such as conspiracy and a substantive offense. In this case a single course of conduct, necessary to establish the murder charge, is the only crime that the state seeks to reprosecute. The double jeopardy objection must be upheld.

For these reasons, we AFFIRM the district court's judgment.

---

**32.** *Pandelli v. United States,* 635 F.2d 533, 538 (6th Cir.1980); *see also Pryor v. Rose,* 699 F.2d 287, 291 (6th Cir.1983).

**33.** 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

**34.** *See id.* at 693–95, 100 S.Ct. at 1439; *Harris,* 433 U.S. at 682–83, 97 S.Ct. 2912, 2913. *See also Pandelli,* 635 F.2d at 538; *Pryor,* 699 F.2d at 291.